May it please the Court, my name is George Pence, and I am here today on behalf of Carlos Alberto Gonzalez Garcia, the petitioner in this case. I would like to reserve two minutes for rebuttal. Your Honors, this case is about immigration proceedings. They were so infected with error that their result is completely unreliable. Counsel, I'm going to interrupt you. How do we have jurisdiction? You have jurisdiction over this case under Section 1252 of the INA. Well, now that the Court's opinion in Granados-Oseguera has been withdrawn, is there any authority supporting your position that this Court has jurisdiction over a claim not raised before the BIA? Your Honors, when Granados-Oseguera was withdrawn, the reasoning that was substituted in its place does not implicate the reasoning that was originally put forward in the original opinion. That reasoning should sustain this Court's jurisdiction here today. Your Honors, you have jurisdiction. But I ask, do you have any case that supports your position? I would point to, among others, Gama Puga, Your Honor, which I can cite to you at 488-F3D-812-815, which is a court of this case or a case of this court in 2007. And I can cite that. It's not in your brief. Yes, it is, Your Honor. Right. The reason I can cite that case is because there was a clear and obvious cascade of error that began before the original immigration judge and proceeded through the direct appeal stage of this litigation. Your Honors, the petitioner had to prove 10 years of continual physical presence in the United States in order to establish his eligibility for cancellation of removal. Mr. Gonzalez-Garcia informed his counsel on the record that he satisfied these requirements in two ways. First, by affirming an asylum application that indicated that he came to the United States numerous times before 1994. And second, by attaching to that asylum application a date stamp visa showing that he came to the United States in 1987. Now, in the face of this clear evidence, Mr. Gonzalez-Garcia's counsel before the immigration judge conceded that he first came to the United States in 1994. That concession is completely belied by the record in this case. And it was solely on the basis of this concession, Your Honors, that the immigration judge denied Carlos Alberto Gonzalez-Garcia's application for cancellation of removal. Now, Judge Simpson, you've expressed some concern about finding facts as an appellate court. In this court, this case does not require you to do so because the errors of counsel, the original legal counsel, and extending through the direct appeal, the non-attorney community organizer who submitted a brief, are plain on the face of the record. Ms. Sims failed to or erroneously conceded that Mr. Gonzalez-Garcia came here in 1994, and that error was overlooked and not argued or addressed in any way whatsoever on the direct appeal. As a result, the Board has not had the opportunity to address this issue. Now, the reason why this court may exercise jurisdiction, nonetheless, is because the only time Mr. Gonzalez-Garcia could have raised the issue of his counsel's, of his original counsel's ineffective assistance and the failure of the community organizer who filed a three-page brief on his behalf before the Board would have been on a motion to reopen. And as Godma Puga indicates, Your Honor, a motion to reopen, and as was indicated in the prior case that was argued here, a motion to reopen is not a remedy available as of right. And if — All right. There's another question about the motion to reopen. The government argues that the Petitioner has already filed his one authorized motion to reopen, and that the regulations do not permit a second motion. How do you — what do you do with that argument? Your Honor, the Board has the discretion to reopen the case, even upon a second motion to reopen. But I'd like to also clarify here that that second — that motion to reopen is not before the Court. And therefore, I don't believe it can be the basis for this Court's jurisdictional determination. The Court was supplied with that motion to reopen, given the gravity of the ineffective assistance and then failure to recognize ineffective assistance that occurred in this case, in order for the Court to be fully aware of the circumstances that were going on. This was especially necessary in a Petitioner's view, or on counsel's view, given the large number of filings that were made before counsel came on the case in the Ninth Circuit, which clouded the record somewhat. But, Your Honor, I don't believe that motion to reopen is before this Court, and so it shouldn't impact this Court's determination. But it's a fact, is it not, that he's had one motion to reopen. Is he — you say it's within the Court's discretion to allow a second one, even though the regulations say only one motion to reopen is permitted? My understanding is that that is the case, Your Honor. But I would — I would — that is my understanding, and I — and I would not like to assert that too strongly. Well, there is a case that says that there is discretion to permit a second one if the Petitioner has been defrauded by an individual purporting to provide legal representation. But those are usually the cases of the notarials where they say I'm a lawyer and they're not. I don't see that in this case. Well, certainly you have in this case a Petitioner who was defrauded by the original counsel who got him into asylum proceedings, and then he was served — ill-served, incompetently served by his counsel who argued before the immigration judge. And, sir, I'm not aware of the case of which you speak, Your Honor, but I would — I would insist here today that at least factually there are similarities between what you're describing and what occurred in this case. All right. The case is 282 Fed Third, 1224. And I would be happy, Your Honor, to submit additional briefing if the Court requires it. We'll let you know if it's required. Okay. Thank you. All right. But one of the — I forgot to take my cell phone off, so everybody — All right. Your Honor, I would — did you have a — And so I forgot to turn this off. This won't count against your time. Thank you, Your Honor. It'll count against my time. I took the battery out of mine because I was so afraid it would go off. Ainsley, well, you know. But, you know, we could hold a mandate and allow you to go before the BIA and make a motion to reopen. Yes. That we could do. That you could, Your Honor. Yeah. Under the clearly established precedent of this Court, that is an option available to you. And I would argue that this Court, should it choose to deny the petition for review, should pursue that course of action. That course of action does put time limitations on the Petitioner's ability to generate the type of documentation that might be necessary to support a motion to reopen. But that is a remedy that the Petitioner requests in the alternative. Well, we could, you know, do 120 days or something like that. That would give you time. You'd represent them before the BIA? Your Honor, I would have to discuss that with the powers that be at my law firm, who have gracefully allowed me to argue this case in the first instance. But it would be something I'd be willing to at least discuss with them. Well, discuss it with them. Tell them to do it. No, you can't. You just can't take them, you know, across the River Jordan and then just, when you get still in deep water, drop them. I mean, you were Judge Wallace's law clerk, weren't you? I was, Your Honor. That's where you learn how to keep your voice up. For sure, you learn a lot of things from Judge Wallace. That's true. And so, well, I hope that that's good luck. What's the name of your law firm? Sullivan & Cromwell, Your Honor. Sullivan & Cromwell. Your Honor, all we have is Sullivan & Cromwell. It's free to do it. Well, there you go, Your Honor. Let's see what you can accomplish. Well, you can do a lot when you're a federal judge. I can't do much. When I was a district judge, I could do a lot. But here, just the voice, only one. In addition, Your Honor, I would just like to stress here that the petitioner's application for cancellation of removal states plausible grounds for relief, because there's absolutely nothing in this record other than the erroneous concession on the part of Ms. Sims and the unsigned, unaffirmed cancellation of removal application that in any way suggests that Mr. Gonzalez-Garcia did not do it. Well, who filled out that application for him? Well, Your Honor, we can't state conclusively who filled out the application on his behalf. It is completely unsigned. The only application that is signed by Mr. Gonzalez-Garcia was his asylum application, which was gone over with the assistance of a government attorney. These applications appeared on the record on appeal without any type of verification or indication of where they came from. But I can tell you, Your Honor, that that application was handed to the immigration judge by Ms. Sims, the very person that erroneously conceded that he first came to the United States in 1994. All right. Your Honor, I see my time has expired, and I'll save the last two for rebuttal. Go for it. Thank you. Good morning. May it please the Court. Don't you think that's the way to go? Oh, go ahead. I'll let you introduce yourself. May it please the Court. Breanne Cohen on behalf of the United States Attorney General. I'm sorry, Your Honor, what was your question? No, no. I said, don't you think that's the way to go here, is to, you know, we issue a mandate, we stay it, we allow this great law firm to appear with this wonderful young man to appear, and I'm going to ask the BIA to reopen. Well, Your Honor, I know that the Court has done that in the past, but I think as we argued in our brief, I'm not sure of the authority to do that. While there is authority to stay the mandate for a petitioner for certiorari, there's no mention in the rules of a stay of the mandate that I'm aware of for seeking alternative relief. I think especially in this case where a petitioner did have the opportunity to file a motion to reopen with the Board, did in fact do so, and may still file a motion to reopen. In fact, it's unexplained why he hasn't done so to this point. And I understand that concerns about the temporal and numerical limitations on motions to reopen, which do exist, the Board does have, you know, sua sponte authority to reopen in any situation it sees fit. Okay. So that's all that he's really asking for. That's all that, whether or not the mandate should be stayed? No, that's all he really wants to do is go back to the Board with competent counsel and ask the Board to reopen. Well, respectfully, Your Honor, I think that that would upset the regulatory scheme that is in place for such motions to reopen. And I think if we look through sort of the statutory exhaustion scheme and the – Go to the Board. The Board can say yes or no. Yes, but the Board – The Board can do that, right? Yes, the Board can sua sponte reopen anytime. Right, yeah. But the Board has already looked at this case. They have already examined a motion to reopen filed by Petitioner. Well, they haven't looked at it through the eyes of competent counsel. Well, I – yeah, the first motion to reopen was filed pro se. But, again, I don't think there's any reason for this Court to overturn that scheme. I mean, I think the proper remedy would have been to allow Petitioner to simply file that, and then if the Board denies the motion to reopen, regardless of the state of the mandate, then he can petition for review of that decision. And I think that's the appropriate remedy in this case. And staying the mandate and essentially, you know, allowing the Board to look at it outside of any authority to do so is sort of going outside of the scope of the rules as I see them. Well, could his counsel go to the Board today and file a motion to reopen? He could go today and file a motion to reopen. He could have at any point. Again, it would be barred by the regulations. But, again, as you noted, the Board does have the sua sponte authority to reopen. But the Board could exercise its discretion and allow reopening. It could. It is possible. Yes, Your Honor. It's not really that big a deal. Well, no, it's not that big a deal, except that I'm just not sure what the authority is. And we don't have any really explanation for why that hasn't been done up until this point. And so to stretch the mandate in this case rather than to follow the procedures, I'm not sure where the court would get that authority, as we discussed in our brief, and why we would do that in this case where the opportunity has existed to this point. And just to go back to sort of the jurisdictional issues and the exhaustion issues, in this case statutory exhaustion would be required. There's no indication that Petitioner was unaware of the events underlying this new and effective assistance of counsel claim at the time that he filed his direct appeal with the community service organization before the Board. It's really unclear on this case, exactly because Petitioner has not complied with the Lozada requirements. We do not have even a personal affidavit from Petitioner explaining why he did not bring up to the community organizer this purported 1987 entry date. And, indeed, the 1987 date is disputed by the facts that are on the record. He has consistently said that he entered in 1994. And while there is a date stamp that's a border crossing date stamp in 1987, there's no indication that Petitioner continuously resided beyond that point. And, indeed, the record belies that assertion where there is a letter or, excuse me, a form from Petitioner's high school indicating that he had previously attended middle school in 1993 in Tijuana, Mexico. So I think in this case there's compliance with exhaustion and the Lozada requirements is critical in this case because otherwise we are allowing Petitioner to get around a system that is in place. It's depriving this Court of a fully developed record and the agency's expertise in this area. And it's depriving the Court of the agency's decision on whether or not Petitioner can even show prejudice or some other grounds for relief. Well, you know, the agency is swamped, right? Yes, Your Honor. I think that's fair. And what happened to our Court was a few years ago where we used to get 800 of these cases a year. At one time we got 8,000 at one time, see? You know? And a lot of those were just that was called streamlining. It bypassed the BIA and sent the streamliner to us, see? And I understand the Court's concern with, you know, the facts around this case, and it would be wonderful if everyone had the competent counsel that Petitioner has now, but unfortunately I think it's important to rely on the procedures that the Board has in place and to keep this Court. What about the Board's view that a disbarred attorney can practice before it? Well, again, I don't know how to answer that question. There's a lot of things going on. You're a young person. You'll find out about them someday. Yes, Your Honor. And I'm not sure that I have anything else to add unless there are any further questions. Thank you. We ask that you deny the petition for review. Thank you. Okay. Anything else? Your Honor, I just have one point to make, which is that the government stressed in its rebuttal argument that there is no authority for this Court staying its mandate. And I have argued this point in my brief, and I believe it's absolutely clear that there are at least two cases in this circuit which allow for exactly that remedy, including Rios-Parrillos v. INS and Rodriguez-Larisse v. INS, which can be found at 776-F2D-859 and 282-F3D-1218. Your Honors, thank you very much. For these reasons, the Court --" Were any of those Judge Wallace's cases? I don't believe they were, Your Honor.  All right. Thanks. Thank you very much. All right. Now, number three.
judges: Pregerson, D.W. Nelson, Singleton